No. 45,046

WAYNE G. SMITHSON, Executor of the Will of Marvella Smithson, Deceased, WAYNE G. SMITHSON, Individually, *Appellants*, v. DILLARD H. DUNHAM, *Appellee*.

(441 P. 2d 823)

Opinion filed June 8, 1968.

*David H. Heilman*, of Council Grove, argued the cause and was on the briefs for the appellants.

*Robert M. Siefkin*, of Wichita, argued the cause, and *Leo Newell Johnson*, of Council Grove, and *George B. Powers, John F. Eberhardt, Stuart R. Carter, Robert C. Foulston, Malcolm Miller, Robert N. Partridge, Richard C. Harris, Gerald Sawatzky, Donald L. Cordes, Robert L. Howard, Charles J. Woodin, Mikel L. Stout, Benjamin C. Langel, Phillip S. Frick, Jerry G. Elliott, John E. Foulston, Stanley G. Andeel*, and *John E. Neal*, all of Wichita, were with him on the briefs for the appellee.

The opinion of the court was delivered by

KAUL, J.: This is a wrongful death action under the provisions of K. S. A. 60-1901. Appellants have appealed from a summary judgment in favor of defendant-appellee.

The tragic accident, out of which this lawsuit arose, occurred at an open uncontrolled, rural intersection of two county roads in Morris County at approximately 5:45 p. m. on August 13, 1965. The intersection is located about three miles north and one-half mile west of Burdick. It is formed by the intersection of what is known as Burdick road, a north-south black topped county road, and an east-west county road.

At the time of the accident William Smithson was driving a 1960 Falcon station wagon, owned by his father, Wayne G. Smithson, in a northerly direction on Burdick road. William's mother, Marvella Smithson, the decedent, occupied the right front seat beside William. William, fifteen years of age at the time, was the holder of a restricted driver's license, issued under the provisions of K. S. A. 8-237.

Dillard H. Dunham, defendant-appellee, was driving his 1947

Studebaker pickup truck in an easterly direction on the dirt or gravel intersecting road.

At the time of the accident Wayne Smithson had a "star route contract" for carrying United States mail. On the evening in question, Wayne wanted to go fishing with a friend so he asked his wife, the decedent, and his son, William, to make the mail run for him. Wayne left home to go fishing about 4:00 p.m. The evening mail run ordinarily commenced about 5:00 p.m., the time necessary to complete the run is not shown in the record.

Plaintiffs' petition alleged the accident and resulting death of decedent was proximately caused by the negligence and gross and wanton negligence of defendant. The claim of gross and wanton negligence was abandoned in the course of pretrial proceedings.

In his answer defendant (Dunham) alleged the negligence of William was either the sole or proximate cause of the accident and that his negligence was imputed to decedent by reason of William being an under age driver and for the further reason that William and his mother were engaged in a joint enterprise.

After the pleadings were filed, the parties proceeded with pretrial matters. Interrogatories were submitted to and answered by Wayne G. Smithson and defendant. Depositions were taken from defendant, William, Wayne and Don Reed, a trooper for the Kansas Highway Patrol. At this juncture, defendant filed a motion for summary judgment, the proceedings in connection with the hearing thereon are narrated in the record as follows:

"On February 3, 1967, defendant-appellee's motion for summary judgment was heard by the trial court. At such hearing the parties agreed that the accident occurred on August 13, 1965, at the intersection of two county roads in Morris County, Kansas, and that the roads had no traffic control devices or signs on them, and that the intersection was located approximately one-half mile west and three miles north of Burdick, Kansas.

"Appellant's attorney then asked appellee's counsel to state the facts to the court and added that if there were some facts to which appellant could not agree, he would interrupt the statement of facts to so indicate. Appellant's attorney then added, 'I don't think the facts are particularly in dispute.'

"The parties then agreed that appellant's 1960 Falcon station wagon was proceeding north on a blacktop county road called the 'Burdick Road' at approximately 55 miles per hour; that appellee was proceeding east on a graveled county road in a Studebaker pickup truck at approximately 15 to 20 miles per hour; that the front of the Falcon station wagon struck the right front side of the pickup; that the driver of appellant's station wagon was William Smithson who was 15 years old at the time; that he was accompanied by his mother, Marvella Smithson, an adult, and that the eastbound truck was being driven

by appellee Dillard Dunham. The parties also agreed that the testimony as to how the accident occurred was contained in the depositions of William Smithson and Dillard Dunham.

"Appellee's attorney then stated the questions of law to be determined as follows:

"Now, I think we should be able to agree that one of the questions for Your Honor to determine is whether or not William Burns Smithson was guilty of negligence as a matter of law. I think that is the No. 1 question to decide. The second question I think Your Honor has to decide is the type of passenger that Mrs. Smithson or Marvella Smithson was in the vehicle. And under this point, it would seem to me that Your Honor is going to have to decide that if you find that William Smithson was guilty of negligence as a matter of law, whether at this point the negligence of William Smithson is imputed to Marvella Smithson.

"Appellant's counsel made no objections to the statements of agreed facts and issues presented to the trial court by appellee's attorney."

The trial court sustained defendant's motion without stating its reasoning and directed that judgment be entered for defendant.

Since the parties stipulated that the testimony, as to how the accident occurred, was contained in the depositions of William and the defendant, we pause at this point to relate further relevant testimony contained therein.

Defendant testified that he was traveling between fifteen and twenty miles per hour when he entered the intersection. He looked both ways several times, he does not remember whether it was twice or three or four times, before entering the intersection. He did not see the Smithson station wagon. He later discovered there was a blind spot, 100 to 200 feet from the intersection, which he was not aware of on the day of the accident. Just prior to entering the intersection he was looking ahead.

William testified that he was driving fifty-five miles per hour as he approached the intersection and does not remember whether he slowed down or looked for traffic. He was ten to fifteen feet from the intersection when he first saw defendant's pickup truck entering from the west. He could give no reason why he did not see it before. He testified there was nothing to restrict his vision except a couple of little trees and grain in an adjacent field, which he later admitted did not obstruct his view.

As indicated by the statements of counsel at the hearing on the motion for summary judgment, even though this is a negligence action, there appears to be no dispute as to the facts. The issue before the trial court, as well as on appeal, was whether, under the

facts established, William was guilty of negligence as a matter of law and if so was his negligence imputed to decedent so as to bar recovery for her death.

Appellants' counsel in his brief and on oral argument before this court vigorously argues that in an automobile action, where the parties charge each other with negligence and contributory negligence, each party is entitled to a trial by jury. We agree with counsel that the proposition stated is ordinarily the case. The instances are relatively rare when the facts are such that a court should say that negligence has been established as a matter of law by summary judgment or at any other stage of the litigation. It is only when conduct can be said as a matter of law to have fallen below the standard of a reasonably prudent person that the question of contributory negligence may be taken from the jury and determined by the court. (*Shehi v. Southwest Rentals, Inc.,* 199 Kan. 265, 428 P. 2d 838; *Bingham v. Hillcrest Bowl, Inc.,* 199 Kan. 40, 427 P. 2d 591; *Lawrence v. Kansas Power & Light Co.,* 167 Kan. 45, 204 P. 2d 752; 3 Barron and Holtzoff, Federal Practice and Procedure, Summary Judgments, § 1232.1.)

Usually, questions as to negligence or contributory negligence are not subject to determination on summary judgment because the evidence and inferences, which might be implied therefrom, construed in the most favorable light against the movant, as required, leave in question a genuine issue as to some material fact. In this regard we have strictly adhered to the admonition of the statute (K. S. A. 60-256 [c]) in limiting the disposition of litigation by summary judgment. (*Supreme Petroleum, Inc., v. Briggs,* 199 Kan. 669, 433 P. 2d 373; *Shehi v. Southwest Rentals, Inc.* supra; *Secrist v. Turley,* 196 Kan. 572, 412 P. 2d 976; *Brick v. City of Wichita,* 195 Kan. 206, 403 P. 2d 964.)

With respect to the negligence of William the facts are not in dispute, the question is simply whether they establish his negligence as a matter of law. In other words, do the facts show that William's conduct can be said as a matter of law to have fallen below the standard of a reasonable prudent person.

By William's own testimony defendant's pickup was first to enter the intersection. William first saw defendant's pickup in the intersection when he (William) was ten or fifteen feet to the south. William also testified that he drove into the intersection at fifty-five miles per hour, without slowing down or applying his brakes.

He did not recall looking for traffic. It is a firmly established rule of this state that the driver of a vehicle has an affirmative duty to keep a proper lookout for other vehicles within his line of vision which may affect his use of the roadway, and it is presumed that a driver will see those things which a person would and could see in the exercise of ordinary care. (*Jarboe v. Pine*, 189 Kan. 44, 366 P. 2d 783; *Bottenberg Implement Co. v. Sheffield*, 171 Kan. 67, 229 P. 2d 1004; *Orr v. Hensy*, 158 Kan. 303, 147 P. 2d 749; PIK 8.03.)

Appellants argue that William was not guilty of negligence as a matter of law within the purview of K. S. A. 8-550 (*b*), providing in substance that where vehicles enter an intersection at the same time the driver of a vehicle on the left shall yield the right-of-way to the vehicle on the right. In this case William was on the left of defendant. However, the statute does not apply, because by William's own testimony defendant entered the intersection first. In such case the situation is controlled by the provisions of K. S. A. 8-550 (*a*) which requires the driver of an approaching vehicle to yield the right-of-way to a vehicle which has entered the intersection from another highway.

Appellants cite the case of *Domann v. Pence*, 183 Kan. 135, 325 P. 2d 321, involving an intersection collision where the right-of-way of the parties was a question, and this court held on appeal the question of plaintiff's contributory negligence was properly submitted to the jury. The *Domann* case involved a blind, rather than an open, intersection and is distinguishable from the case at bar in other respects.

We have examined other cases cited by appellants and find them to be either not in point or distinguishable on the facts. Viewing the undisputed evidence and any inferences which might be drawn therefrom, in the light most favorable to appellant, we are nevertheless compelled to hold that William by his own testimony, was guilty of negligence.

In their second point on appeal, appellants contend that even if William was guilty of negligence as a matter of law, the same cannot be imputed to decedent nor to her heirs. Appellee counters this contention by arguing decedent is legally bound by and responsible for the negligence of William, so as to bar recovery in this action on either of three theories. First, by virtue of the provisions of K. S. A. 8-222; second, by virtue of the restrictions of William's driver's license, and, third, by virtue of being engaged in a joint enterprise.

K. S. A. 8-222 reads as follows:

"Every owner of a motor vehicle causing or knowingly permitting a minor under the age of sixteen years to drive such vehicle upon a highway, and any person who gives or furnishes a motor vehicle to such minor, shall be jointly and severally liable with such minor for any damages caused by the negligence of such minor in driving such vehicle."

K. S. A. 8-264 provides that no person shall permit a motor vehicle owned by him or under his control to be driven by any unlicensed person.

With respect to the liability of an owner or permittee, both 8-222 and 8-264 were considered in *Greenwood v. Gardner*, 189 Kan. 68, 366 P. 2d 780. Grandfather Gardner, defendant, allowed his ten year old grandson, Michael Greenwood, plaintiff, to drive grandfather's automobile. The child was injured when the motor died in an intersection and the automobile was struck by another vehicle. Grandfather was held liable for Michael's injuries on the statutory theory of having placed the automobile in the hands of an incompetent in violation of the two statutes mentioned. It was stated in the opinion:

". . . The effect of the mentioned statutes is to render any person not licensed or under the minimum statutory age conclusively incompetent to drive a vehicle on the public highway of this state." (p. 70.)

In announcing the rule as to the liability of an owner or permittee for the negligence of an under age driver, under the provisions of K. S. A. 8-222 (formerly G. S. 1935, 8-222), in *Shrout v. Rinker*, 148 Kan. 820, 84 P. 2d 974, this court declared the legislative intendment to be:

". . . By this language the legislature declared it to be the policy of this state that liability should attach to any person who placed as dangerous an agency as an automobile within the control of a minor who was not more than sixteen years old. The idea of the legislature was to discourage the practice of endangering the safety of the public by permitting people of the classes named to drive a motor car on the streets. . . ." (p. 824.)

The liability of an owner or permittee for the negligence of an under age driver has been clearly imposed under the provisions of the statutes mentioned. Do the statutes also bar recovery for injuries or death by the owner or permittee, when an occupant, from a negligent third party where the under age driver has also been guilty of negligence which contributed to or was the proximate cause of the injury? The question was framed but not fully reached for conclusive determination in *Gatz v. Church*, 180 Kan. 15, 299

P. 2d 81. Gatz sued Willfred Church, who occupied the right front seat, for the negligence of his son, Ralph Church, who was driving. Willfred cross-petitioned for personal injuries, thus putting the Churchs' in the status of claimants' or plaintiffs'—as the Smithsons' are here. The court stated:

"If we understand plaintiff's contention correctly, we are asked to hold that the claim of Willfred on his cross-petition is barred by the negligence of his fifteen-year-old son in operating Willfred's automobile. The trouble with this argument lies in the fact that under the statute liability of the owner arises from the negligence of the minor who is permitted to drive, and the negligence of Ralph, if any, is one of the very questions in issue and as yet undetermined." (p. 17.)

The trial had terminated in a hung jury and appeals were taken by both parties from orders overruling their respective demurrers to the evidence. While the opinion indicates, as claimed by appellee, that the court recognized the son's negligence, if found to exist, to be a bar to recovery by the father under 8-222, *supra,* we are not content to use appellee's interpretation of *Gatz* as a precedent as the only basis for our decision here.

We believe legislative intendment on the subject, in harmony with expressions of this court, is significantly expressed in several provisions of K. S. A. 8-237 relating to the issuance of and conditions pertaining to restricted licenses which may be issued to persons under sixteen and over fourteen years of age.

Part 1 of 8-237 provides that such a restricted license shall only be issued upon the written application of a parent or guardian with a further restrictive proviso with reference to cities which have adopted an ordinance requiring a showing of necessity by the applicant. Under this proviso the holder of a restricted license may drive for other than school purposes only:

". . . when accompanied by a parent or guardian who is the holder of a valid operator's or chauffeur's license, and who is actually occupying a seat beside the driver. . . ."

Part 2 of 8-237 declares that a restricted license issued to a person regardless as to where he resides shall provide that such person may drive only:

". . . (1) during the hours of 7 a. m. to 7 p. m. unless accompanied by an adult who is the holder of a valid operator's or chauffeur's license and who is actually occupying a seat beside the driver; (2) over the most accessible route between the licensee's residence and the school in which he is enrolled; and (3) for the purpose of performing errands for his parents in connection with farming or other agricultural pursuits;"

We note that at the time of the accident in question William was not engaged in an errand in connection with farming.

We believe the requirement of a licensed adult or parent or guardian in the seat beside an under age driver, under the circumstances related in 8-237, except where the specifically excluded driving purposes obtain, is in addition to 8-222 and 8-264, a further declaration of the legislature as to the policy of this state with regard to the legal effect of the negligence of an under age driver where a parent is such occupant.

We hold that where a parent occupies a seat beside an under age driver, under the undisputed facts and circumstances as established in this case, the negligence of such under age driver, if it contributes to or proximately causes an accident, bars recovery from a third party for injuries or death of such parent.

The Kansas wrongful death statute K. S. A. 60-1901 provides that such an action may be maintained if decedent might have maintained the action had she lived. It follows that since, as we have related, decedent, if she had lived, could not have maintained this action, it must fail.

The judgment is affirmed.